```
             UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - -x
JOHN DOE                             No.3:19CV620(AWT)

              Plaintiff

        vs.

YALE UNIVERSITY, ET AL
                                     HARTFORD, CONNECTICUT
                 Defendants          OCTOBER 16, 2019
- - - - - - - - - - - - - - - - - -x
```

**TELEPHONIC STATUS CONFERENCE**

```
    BEFORE:

         HON. ALVIN W. THOMPSON, U.S.D.J.

APPEARANCES:

    FOR THE PLAINTIFF:

         LAW OFFICE OF JORGE HERNANDEZ
              823 Anchorage Place
              Chula Vista, California  91914
          BY: JORGE I. HERNANDEZ, ESQ.
              jorge@jihlaw.com

         LAW OFFICE OF JONATHAN EINHORN
              129 Whitney Avenue
              New Haven, Connecticut  06510
              einhornlawoffice@gmail.com
    FOR THE DEFENDANTS:

         DONAHUE, DURHAM & NOONAN
              Concept Park
              741 Boston Post Road
              Guilford, Connecticut  06437
          BY: PATRICK M. NOONAN, ESQ.
              pnoonan@ddnctlaw.com

                              Corinna F. Thompson, RPR
                              Official Court Reporter
```

```
 1                              11:07 AM
 2              THE COURT:  I'll have people identify
 3   themselves for you so you remember the voices.
 4              Go ahead, Mr. Einhorn and Mr. Hernandez.
 5              MR. EINHORN:  Hi.  Jon Einhorn.
 6              MR. NOONAN:  Pat Noonan representing the
 7   defendants.
 8              MR. HERNANDEZ:  Jorge Hernandez representing
 9   John Doe.
10              THE COURT:  So I understand we don't have
11   agreement on exactly what will happen at the hearing and
12   the area of disagreement is really witnesses.
13              As I understand it, the issue, at least as I
14   understand looking at the parties' papers, is whether
15   there was a settlement agreement, and if so, what were
16   the terms of the agreement.  I understand the
17   plaintiff's position is that there was not a settlement
18   to forego all litigation, that, at best, there was an
19   agreement that we not proceed with a preliminary
20   injunction hearing, and the defendants' position is to
21   the contrary.
22              As I look at the papers, it looked to me as if
23   the people who were involved in conversations about this
24   were the lawyers.  So I was expecting to hear from the
25   lawyers.  I had sent word that I would be happy to have
```

1   the lawyers simply make representations as officers of
2   the court.  That would work for me, but I guess I should
3   ask, because I think Mr. Noonan inquired, whether he
4   should have someone here to ask him questions.
5              It looks to me as though there's a whole
6   exchange of e-mails and the e-mails and the drafts --
7   the documents speak for themselves -- but there are
8   instances where there were telephone conversations.  My
9   impression is that the conversations were between
10  Mr. Noonan and Mr. Hernandez, but there were also
11  references to conversations with Mr. Einhorn and
12  Mr. Noonan.
13             Was there anybody else who actually spoke to
14  somebody on the other side as part of the negotiations?
15             MR. NOONAN:  No, Your Honor.
16             MR. HERNANDEZ:  No, Your Honor.
17             THE COURT:  All right.  Well, Mr. Hernandez,
18  do you want the opportunity to cross-examine Mr. Noonan?
19             MR. HERNANDEZ:  Well, certainly the other
20  issue, Your Honor --
21             THE COURT:  Don't change -- I asked you a
22  question.
23             MR. HERNANDEZ:  Yes, sir, I would like to.
24             MR. NOONAN:  Question Mr. Noonan?
25             MR. HERNANDEZ:  Yes, sir.

1       THE COURT: And Mr. Noonan, do you want the
2  opportunity to have Mr. Hernandez cross-examined?
3       MR. NOONAN: I guess I may. I don't know that
4  I'll need it, but I suppose if he cross-examines me, I
5  suppose I ought to have the opportunity to do that.
6       THE COURT: All right. Mr. Einhorn will be
7  there and he can question Mr. Hernandez and we'll have
8  one of your colleagues there to question you,
9  Mr. Noonan.
10      Okay. And then you wanted to make another
11 point, Mr. Hernandez?
12      MR. HERNANDEZ: Yes, Your Honor. With the
13 ruling you just made, I think both parties we stipulated
14 to not having another attorney at the court. Now it's
15 different. I understand that. But we weren't going to
16 have other parties questioned individually.
17      THE COURT: Well, how are you going to
18 cross-examine Mr. Noonan?
19      MR. HERNANDEZ: I can cross-examine him like I
20 would any witness.
21      MR. NOONAN: I guess I would object to that,
22 Your Honor. If we're going to do examination of the
23 lawyers I really do think it's got to be a different
24 lawyer conducting the examination.
25      THE COURT: I think so. If Mr. Noonan is on

1     the witness stand he can't be examining himself.  You
2     will either have people on the witness stand which
3     allows for the opportunity of cross-examination or we
4     won't and we'll just go based on representations of
5     counsel.
6              So do you all want to rethink that,
7     Mr. Hernandez?
8              MR. HERNANDEZ:  So if -- well, let me make
9     sure I understand you.  If I'm up there giving my
10    portion of testimony, I won't have to have an attorney
11    questioning me to elicit my testimony, which is the same
12    for Mr. Noonan, correct?  But if I have questions about
13    Mr. Noonan's testimony, I can't cross-examine him
14    afterwards while I'm sitting in the chair in my regular
15    attorney's chair and he's he up on the stand answering
16    his own narrative essentially?
17             THE COURT:  Well, I guess I'll put it this
18    way:  I'm either going to have testimony from witnesses
19    or I'm going proceed based on representations of
20    counsel.  We're not going to have some hybrid mish-mash
21    thing that nobody can figure out exactly where we are
22    procedurally.
23             MR. HERNANDEZ:  I understand.
24             THE COURT:  So if it's based on counsel, then
25    you'll get to respond to what Mr. Noonan says and he'll

1     get to respond to what you say.  If there are questions
2     for Mr. Noonan they'll be put through the Court.  If you
3     want to cross-examine him, then he would have to be a
4     witness.
5                 MR. HERNANDEZ:  Then the representations of
6     the counsel with the opportunity to clarify the
7     questions through the Court would be fine with me, Your
8     Honor.
9                 THE COURT:  Okay.  So that's how we'll
10    proceed.
11                And then I don't know if you looked at the
12    papers, Mr. Einhorn, because I know you're trying to
13    stay on the periphery of this, but there are a couple of
14    statements that are attributed to you by Mr. Noonan.
15                Are you familiar with that?
16                MR. EINHORN:  Yes.  I don't think it's
17    anything substantive though.  I think I was just brought
18    into it in sort of being -- was told generally what was
19    going on.  I think that's more my involvement.
20                THE COURT:  You were told by whom?
21                MR. EINHORN:  Both counsel.  That's the extent
22    of my knowledge.  I didn't participate in the settlement
23    discussions at all.
24                THE COURT:  I think Mr. Noonan has in his
25    papers a statement that you made a particular statement

1	twice and I just don't know if we're going to have a
2	debate about whether that occurred or not, or whether I
3	should accept that, or whether you should make a
4	statement yourself.  I mean I think -- I hate to have
5	you spend a lot of time here for something that wouldn't
6	take long.  Maybe we could take care of that now.
7	         MR. EINHORN:  Could I ask -- I just ran from
8	Bridgeport court so I don't have it in front of me.
9	Could I ask through Mr. Noonan, or through you, Your
10	Honor, what the statement was that I made?
11	         THE COURT:  I think I remember reading
12	something that said -- I think in the memo on page 16
13	and on page 7 it says, Defense counsel spoke with
14	Attorney Einhorn who advised that Attorney Hernandez had
15	told Attorney Einhorn.  And this actually goes back to,
16	I guess, the affidavit, Paragraphs 15 and 19 it refers
17	to.  Attorney Einhorn told Attorney Noonan that although
18	the plaintiff was initially willing to enter into the
19	agreement, he had changed his mind.  That's in quotation
20	marks.
21	         MR. EINHORN:  Well, my recollection is that it
22	was more than that, I thought.  I think -- I think that
23	was part of a conversation, but I think the
24	conversation, as I recall, was more extensive than that.
25	         THE COURT:  Your conversation with Attorney

1    Noonan or Attorney Hernandez?

2            MR. EINHORN: Both, actually. I think
3    Mr. Noonan was asking me my understanding of what was
4    happening with the settlement. I think my recollection
5    is I was trying to explain my limited knowledge of what
6    was happening.

7            Anything I knew at all about the settlement
8    was from both Mr. Noonan and Mr. Hernandez. That's all.

9            I'm not sure it's fair to -- as I think back,
10   I don't know that I just blurted out that he changed his
11   mind. I think it was more we discussed in a little more
12   detail about generally that we just weren't willing to
13   accept the limited settlement or the limited relief that
14   was offered at the end of the ball game.

15           THE COURT: And were you involved in the
16   exchange of the drafts?

17           MR. EINHORN: No. I never saw the drafts.

18           THE COURT: Never saw the drafts.

19           MR. EINHORN: No, I wasn't part of that. I
20   think I saw them when they were done of course, but I
21   had nothing to do with drafting or reviewing them.

22           THE COURT: I guess I just want to, in case
23   something comes up and there's a disagreement about what
24   you say or something --

25           MR. EINHORN: Sure.

1         THE COURT: -- I think it will be more
2    efficient if you're here.
3         MR. EINHORN: Okay.
4         THE COURT: I think I'll impose on you and
5    have you come.
6         MR. EINHORN: Sure.
7         THE COURT: And then I understand there's also
8    disagreement about whether there are other people who
9    are going to be material for purposes of my deciding
10   this. There's a disagreement about that and about
11   subpoenas?
12        MR. HERNANDEZ: Yes, Your Honor. Throughout
13   the -- so for instance, Exhibit J to Mr. Noonan's --
14   just to give an example -- he keeps talking about in
15   both the correspondence and say that we're discussing
16   these issues with our clients for settlement. We don't
17   have the authority to accept settlements between the
18   attorneys themselves. So whether or not we had come to
19   an agreement as attorneys, which we did not, but even if
20   we had it it was immaterial because our clients had to
21   accept it. It's confirmed on the writings on both
22   sides.
23        So I would say that anything that he says, any
24   representation that Mr. Noonan says about conversations
25   he had with his client would be objectionable for

1       hearsay.  I don't mind having the attorneys give
2       narrative, but I'm not waiving hearsay objections.
3               THE COURT:  You don't have to waive them but
4       they may be overruled because the question is whether
5       they fall within the definition of hearsay.
6               Mr. Noonan, is your understanding that the
7       attorneys didn't have the authority to reach a
8       settlement when authorized by their clients?
9               MR. NOONAN:  No, that was not my
10      understanding, Your Honor.  I obviously would not make a
11      settlement offer, never have, without getting authority
12      from my client.
13              These clients have nothing to add to this
14      dispute.  Your Honor is right that the communications
15      occurred between myself and Mr. Hernandez and, to a very
16      limited extent, with Mr. Einhorn.
17              THE COURT:  Okay.
18              MR. NOONAN:  Nobody else on Yale's part
19      communicated with either of them about settlement.
20              THE COURT:  Okay.
21              MR. HERNANDEZ:  And I agree with that, Your
22      Honor, the statement that he made that the clients
23      didn't communicate with anybody else.  However,
24      Exhibit J specifically from him says, I have discussed
25      this matter with my client and Yale cannot change the

1         finding of violation or expunge the record.
2                   So this is just one that I'm looking at, but
3         it's replete with references in our correspondence that
4         our individual clients won't accept those terms.  There
5         was nothing that said my client accepts those terms.
6                   So if he's trying to say that he and I had an
7         agreement, which isn't there, his next normal course is
8         going to say, well, my client believed that there was a
9         settlement.  I don't see how that would be an exception
10        to the hearsay rule.
11                  THE COURT:  Well, the question is whether
12        under all the facts and circumstances there was a
13        settlement agreement, and I don't need to hear from the
14        clients.
15                  MR. HERNANDEZ:  So does my client not have to
16        be there?
17                  THE COURT:  Your client has to be there.
18                  MR. HERNANDEZ:  For what purpose, Your Honor,
19        if we're not questioning witnesses?
20                  THE COURT:  Because I ordered him to be.
21                  MR. HERNANDEZ:  Okay.  He is having to fly
22        from Washington state.  It's quite an inconvenience to
23        put on one party and not the other.
24                  THE COURT:  Anything else?
25                  MR. HERNANDEZ:  No, I guess not, Your Honor.

```
1              MR. NOONAN:  Not from me, Your Honor.
2              MR. EINHORN:  No, Your Honor.
3              THE COURT:  Thank you all.
4              MR. HERNANDEZ:  Thank you, Your Honor.
5              MR. NOONAN:  Thank you, Your Honor.
6              MR. EINHORN:  Thanks, Your Honor.
7                   (Whereupon, a recess followed.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**C E R T I F I C A T E**

JOHN DOE VS. YALE UNIVERSITY, ET AL

3:19CV620(AWT)

I, Corinna F. Thompson, RPR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages, pages 1 – 12, are a true and accurate transcription of my shorthand notes taken in the aforementioned matter on October 16, 2019, to the best of my skill and ability.

/s/_____

CORINNA F. THOMPSON, RPR
Official Court Reporter
450 Main Street, Room #225
Hartford, Connecticut 06103
(860) 712-8345